NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSE TIRADO,

        Plaintiff,

   v.

COMMISSONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 13-5767

OPINION

THOMPSON, U.S.D.J.

INTRODUCTION

    This matter has come before the Court to review pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of the Social Security Administration denying Plaintiff Jose Tirado's application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act.  Plaintiff seeks a reversal or, in the alternative, remand of the Acting Commissioner's decision denying her request for Social Security benefits.  (ECF No. 12). Defendant Acting Commissioner of Social Security ("Commissioner") seeks affirmance of the Commissioner's decision.  (ECF No. 13).  The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to Local Civil Rule 9.1(f).  For the reasons detailed below, the decision of the Commissioner is affirmed.

BACKGROUND

Plaintiff, currently fifty-two years old, lives on his own and last worked as a picker. (R. 332).[1] His work experience is mostly comprised of short-term jobs. (R. 41). Plaintiff applied for a period of disability and disability insurance benefits, as well as supplemental security income on October 1, 2009, claiming disability status as of July 1, 2008. (R. 38).

Plaintiff claims disability from injuries relating to a ruptured Achilles tendon (R. 45), back pain, hypothyroidism, hypertension, Bipolar Disorder, and General Anxiety Disorder (R. 41–42). Though Plaintiff began receiving treatment for his asserted mental impairments at the Behavioral Healthcare Clinic at the University of Medicine and Dentistry of New Jersey ("UMDNJ") beginning September 2006 (R. 42), his alleged onset date of July 1, 2008 is more closely associated with the injury to his right Achilles tendon at a basketball game on August 13, 2008 (R. 45). Plaintiff testified at his hearing that he hears auditory hallucinations (R. 41), but there is no indication of that fact in the medical record (R. 42). Plaintiff's medical record also shows that he has a history of using illegal narcotics, refusing treatment, and displaying malingering behavior, including telling staff members at UMDNJ "I went to Social Security for disability. I need you to put me out of work for a year and then I'll decide if I can work." (R. 42) (citing Exhibit 4F, available at R. 318).

On October 11, 2011, Administrative Law Judge Richard De Steno (the "ALJ") held an administrative hearing at which he reviewed Plaintiff's medical evidence and heard Plaintiff's testimony about the above facts. (R. 52–75). On December 1, 2011, the ALJ issued a decision concluding that Plaintiff's only severe impairment was from his ruptured Achilles tendon (R. 40), that he was capable of performing jobs existing in significant numbers in the national

---

[1] Page citations listed as "(R. __)" refer to the certified Administrative Record provided by the Defendant pursuant to Local Civil Rule 9.1(c)(2).

economy (R. 48), and that he thus did not qualify for disability from his asserted onset date (R. 48).  This decision became the Commissioner's final decision when the Social Security Administration Appeals Council denied Plaintiff's appeal on July 31, 2013.  (R. 1).  Plaintiff filed the Complaint appealing the Commissioner's decision on September 27, 2013) (ECF No. 1).

## ANALYSIS

### A.  Standard of Review

This Court reviews Social Security appeals under 42 U.S.C. § 405(g), which empowers this Court to enter "a judgment affirming, modifying or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ determinations, this Court applies a "substantial evidence" standard of review.  42 U.S.C. § 405(g).  "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate."  *Thomas v. Commissioner of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); *see also Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 400 (1971)).  Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently.  42 U.S.C. § 405(g); *Hagans v. Commissioner of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).

### B.  Standard for Disability Benefits Determination

Disability is defined as the "inability to engage in any substantial gainful activity[2] by reason of any medically determinable physical or mental impairment which can be expected to

---

[2] "Substantial gainful activity" refers to jobs that exist in large numbers in the region where the claimant lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).

3

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."  *Id.* § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims under the Act.  *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Plummer*, 186 F.3d at 428.  The threshold inquiry looks to (1) whether the claimant has engaged in any "substantial gainful activity" since her alleged disability onset date.  If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe" enough to limit the claimant's ability to work.  *Id*. §§ 404.1520(b)–(c), 404.1521.  If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. §§ 404.1520(d), 404.1525, 404.1526.  If so, the claimant is automatically eligible for benefits; if not, the Commissioner determines (4) whether the claimant has satisfied his burden of establishing that he or she is unable to return to his past relevant work.  *Id*. §§ 404.1520(f), 404.1560(b); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 92 (3d Cir. 2007) (internal citations omitted).  If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and residual functional capacity ("RFC").  20 C.F.R. § 404.1520(g); *Poulos*, 474 F.3d at 92.

### C. The ALJ's Findings and Final Determination

Following this five-step procedure, the ALJ concluded as follows: (1) Plaintiff had not engaged in substantial gainful activity from the alleged onset date of July 1, 2008 (R. 40); (2) Plaintiff had a severe impairment involving the residual effects of a ruptured Achilles tendon, (R. 40); (3) Plaintiff did not have an impairment or combination of impairments that met or equaled listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526) (R. 45); (4) Plaintiff has no relevant past work, (R. 47); and (5) Plaintiff retained the residual functional capacity for lifting and carrying objects, standing, walking, and sitting up to six hours, with no significant non-exertional limitations, (R.46) and that there are jobs in significant numbers in the national economy for an individual with Plaintiff's characteristics. (R. 48). Accordingly, the ALJ concluded that Plaintiff was not disabled since July 1, 2008. (R. 48).

### D. Analysis of the ALJ's Determination

On appeal, Plaintiff asserts that the record establishes his eligibility for benefits and that the final administrative decision is not based on the substantial evidence in the record. (ECF No. 12, Pl.'s Br., at 9.) Plaintiff contends that the ALJ's determination Plaintiff did not have any non-exertional impairments was incorrect and invalidates the ALJ's subsequent findings in steps three and five. (*Id*. at 9–10). The ALJ acknowledged that Plaintiff asserted that he has impairments of Bipolar Disorder and General Anxiety Disorder; however, the ALJ found that these disorders, "considered singly and in combination, do not cause greater than slight or minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore, non-severe." (R. 42). The ALJ focused on the fact that the medical record showed that Plaintiff had normal mental status examinations, that Plaintiff displayed malingering

5

behavior, and the assessments of the consultative examiner and non-examining consultants. (R. 42-45).

In the social security context, a "severe impairment" is an impairment that inhibits a person's ability to perform physical or mental activities related to work. 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. A mental impairment is not considered severe if, despite the impairment, the person can perform basic work activities; conversely, a mental impairment is severe if it has more than a minimal effect on the person's abilities to perform basic work activities. *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). A plaintiff bears the burden of proving that he has a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987).

The regulations under which an ALJ considers mental impairments are found at 20 C.F.R. §§ 404.1520a, 416.920a. These regulations first call for the ALJ to determine whether the person has a medically determinable impairment; then the ALJ must rate the degree of functional limitation in the areas of (1) activities of daily living, (2) social function, (3) concentration, persistence, or pace, and (4) episodes of decompensation. If the functional limitation in the first three areas is none or mild, and none in the area of episodes of decompensation, then it will generally be the case that the impairment is not severe unless there is other evidence that the person has more than a minimal limitation in his ability to perform basic work activities. Here, the ALJ found that Plaintiff had mild functional restrictions to these first three areas due to mental impairments, and no episodes of decompensation. (R. 43–45). There is no dispute in this case regarding whether Plaintiff had any episodes of decompensation.

The ALJ based this determination in part on the report of the consultative examiner Dr. J. Theodore Brown, who performed a mental status examination on Plaintiff on February 9, 2010.

6

(R. 44). The ALJ cited Dr. Brown's findings that Plaintiff lived alone, cared for his personal needs, drove a car when he had access to one, and socialized with his friends. (R. 44). Though Dr. Brown rated Plaintiff's Global Assessment Functioning ("GAF") at 50-55, which indicates a person with moderate symptoms or moderate difficulty in social, occupational, or school functioning (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th edition – text revision 2000), the ALJ gave this assessment no weight. (R. 45). The ALJ explained this decision by citing to the fact Dr. Brown's assessment was based on the Plaintiff's subjective complaints, and that other evidence in the record indicated that Plaintiff had a history of malingering and had lied to Dr. Brown about his history of substance abuse. (R. 45). Such a rejection of evidence can be appropriate where the ALJ explains his reasons for rejecting the evidence. *See Zaccaro v. Colvin*, 2013 WL 3286153, at *9 (D.N.J. June 28, 2013) (citing *Diaz v. Commissioner of Soc. Sec.*, 577, F.3d 500, 505–06 (3d Cir. 2009) ("ALJ Lissek was at liberty to reject Dr. Weber's opinion in favor of another so long as all the evidence was considered and some reason was given for rejecting the evidence that was rejected"); *see also Bijold v. Astrue*, 2009 WL 1118466, at *6 (W.D. Pa. April 24, 2009) ("In finding that Plaintiff's subjective symptoms were entitled to less than full weight, the ALJ pointed to the fact that Plaintiff never required inpatient care for his impairments, that Dr. Last and the state agency consultants did not find more than minimal limitations, and that the possibility of malingering existed and had not been ruled out.").

      The ALJ's determination of no severe mental impairments is also supported by the assessment of Dr. Joan Joynson, who evaluated the record on April 6, 2010 as the State agency psychological consultant. (R. 356). Dr. Joynson also found that Plaintiff had only mild restrictions from mental impairments on the areas of activities of daily living and social

7

functioning.  (R. 356).  While Dr. Joynson did find that Plaintiff was moderately impaired in his ability to concentrate, the ALJ rejected this finding because it was contradicted by other evidence in Dr. Joynson's own report—in her RFC assessment, she noted "problems with memory, completing tasks or concentration are not indicated"—and because she found Plaintiff had the ability to ask simple questions, request assistance, accept instructions, respond to criticism from supervisors, and cooperate with co-workers.  (R. 360–62).

The Court finds that the ALJ's partial rejection of Dr. Brown and Dr. Joynson's findings, and his determination that Plaintiff was only mildly impaired from his asserted mental impairments in the areas of daily activities, social functioning, and concentrating, was supported by substantial evidence because the ALJ considered their findings, explained his reasons for rejecting their findings, and cited to other evidence in the record supporting his findings.  *See Zaccaro*, 2013 WL 3286153, at *9.

In contesting the ALJ's determination, the Plaintiff cites to medical evidence that was not submitted to the ALJ but was presented to the Appeals Council.  (ECF No. 12, Pl.'s Br., at 11–13).  "Evidence [that] was not before the ALJ . . . cannot be used to argue that the ALJ's decision was not supported by 'substantial evidence.'"  *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991)  (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)).  Under 42 U.S.C. § 405(g), a district court may remand a case if there is new, material evidence to be considered, but there must be a showing that there was good cause as to why it was not presented to the ALJ originally.  Plaintiff has made no such showing here.

Accordingly, the Court finds that the ALJ's determination that Plaintiff's mental impairments did not constitute a severe impairment is supported by substantial evidence.  The ALJ's determinations at step two that the Plaintiff only suffered from severe physical

impairments relating to his ruptured Achilles tendon support his subsequent determinations at steps three and five with substantial evidence. Plaintiff's appeal is denied and the decision of the Commissioner is affirmed.

## CONCLUSION

For the forgoing reasons, the Commissioner's decision is affirmed. An appropriate order will follow.

 */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.
